IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 3:09-0648 |
| | ) | Judge Campbell/Bryant |
| $42,990.00 UNITED STATES CURRENCY, et al. | ) | |

To:   The Honorable Todd Campbell, Chief Judge

### REPORT AND RECOMMENDATION

### I. Introduction

Currently pending in this civil forfeiture case is a motion by claimant Deandre Edmondson to dismiss the case (Docket Entry No. 9), which motion has been specifically referred to the undersigned for a recommendation as to disposition.[1] (Docket Entry No. 10) Included in the government's response to claimant's motion to dismiss (Docket Entry No. 11) is a motion to strike claimant's claim, citing his lack of standing to contest the forfeiture. Having reviewed the arguments of the parties, and for the reasons stated below, the undersigned recommends that both the government's motion to strike and the claimant's motion to dismiss be DENIED.

---

[1] This case is also generally referred to the undersigned for entry of a scheduling order. (Docket Entry No. 4) Pending the outcome of the recommendations made herein, the undersigned will enter such a scheduling order governing the remaining proceedings in this matter.

1

## II. Statement of the Case

The government filed this action in rem on July 15, 2009, seeking forfeiture to the United States of America of $42,990.00 and $49,020.00 United States Currency (hereinafter, "the defendant property"), pursuant to 21 U.S.C. § 881(a)(6), which authorizes forfeiture of such moneys or other items of value "furnished or intended to be furnished by any person in exchange for a controlled substance," or otherwise traceable as proceeds of such an exchange or as moneys used or intended to be used to facilitate a violation involving a controlled substance. In support of its allegations of forfeitability, the government submitted along with its verified complaint the affidavit of Special Agent Dennis Mabry, Tennessee Bureau of Investigation. (Docket Entry No. 2) That affidavit establishes the factual support for the government's complaint, as follows:

> On January 18, 2009, I was contacted by Airport Police Officer Dwight Clark concerning two passengers who were found to be in possession of large amounts of United States Currency while undergoing a routine selection screening process.
>
> I responded to the screening area to interview the two passengers identified as Terrio Williams and Keenan Robert Cooper (hereinafter "Williams" and "Cooper"). Upon arrival, I made contact with Williams and read him his Miranda warnings. Williams provided the following information:
>
> a. He and Cooper arrived at the airport at approximately 2:00 p.m. for a 2:30 p.m. Delta flight to New York City. After arriving, the men learned that their flight had been delayed.
>
> b. He was in possession of $40,000.00 which was found stuffed into several pockets of clothing in his carry-on suitcase. He was instructed to travel to New York to make seasonal clothing purchases for his employer, Deandre Jermaine Edmondson (hereinafter "Edmondson") and the business, Swiss Wear of Nashville. Edmondson had arranged for Williams and Cooper

2

to pick up the currency from the clothing store for the trip to New York. He worked full time at Swiss Wear Clothing and earned approximately $650.00 per week. He was being paid $1,300.00 for making the trip to New York. Edmondson was on an extended vacation and had asked him to go on the buying trip in his place. Williams said he had been to New York approximately 6 times over the last couple of years and had been on a buying trip once before. On that trip, he was furnished with $9,000.00 for purchases. Williams stated he would usually conduct business with two individuals in the garment district known to him only as Mohammed and Ariel.

[Task Force Officer] Ed McKenna interviewed Keenan Robert Cooper who stated the following:

a. He lives in an apartment in New York. He also maintains a residence with his girlfriend in Georgia. He is self-employed in the garment business. He had flown in from New York on January 17, 2009 to meet a business owner known to him only as "Little Dookie." He was introduced to "Little Dookie" by a girlfriend known only as Tash LNU. "Little Dookie" owned the business, Swiss Wear Clothing at 2501 Clarksville Highway in Nashville. The seized currency was given to him by "Little Dookie" and no receipt was furnished. He stated he was in possession of "forty-something thousand dollars." He would be paid maybe $2,000.00 from the funds furnished for the clothing purchase. The businesses from which he was to buy the clothing had no business names, but were located in the Manhattan, New York garment district. He had only been in the clothing business a few months, but added he had been selling clothes for as long as he could remember. . . .

Both sets of currency were bound with rubber bands in $1,000.00 denominational bundles and were concealed in clothing in the luggage of each man. The currency [was found to consist of denominations of 100-, 50-, 20-, 10-, and 5-dollar bills].
. . .

On January 20, 2009, the $42,990.00 U.S. currency and the $49,020.00 U.S. currency were subjected to a dog hit by Tennessee Highway Patrol Trooper Israel Silva and his certified drug detection canine "Colby." Colby is trained to alert by giving an aggressive response, scratching, biting and attempting to retrieve. The currency was placed in a box which was then

3

> placed among several other boxes and "Colby" produced a positive reaction to the box containing the currency.
>
> . . .
>
> I also performed a criminal history check on NCIC of Edmondson, Williams and Cooper and found that all three have drug related criminal histor[ies]. . . .

(Docket Entry No. 2 at 2-5)

The government's filing of its verified complaint and the attachment of the defendant property were accomplished as directed in Rule G of the Federal Rules of Civil Procedure, Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.

On August 20, 2009, claimant Deandre Edmondson filed a verified claim to the defendant property, swearing that he is the owner of the property, which allegedly "represents profits from his business." (Docket Entry No. 7) Thereafter, on September 9, 2009, claimant filed a motion to dismiss the government's complaint pursuant to Fed.R.Civ.P. 12(b)(6). (Docket Entry No. 9) The government responded to this filing by serving special interrogatories related to claimant's identity and relationship to the defendant property, as allowed by Rule G(6) within 21 days of being served with claimant's motion to dismiss. In further response to that motion, the government offered a preliminary defense of its verified complaint, while moving to strike claimant's verified claim for lack of standing. (Docket Entry No. 11) Claimant filed a response to the government's motion to strike. (Docket Entry No. 12) In his response filed October 12, 2009, claimant stated that he had served answers to the government's interrogatories as of that date. Id. at 4 n.2. Pursuant to Rule G(6)(c), the government then had 21 days in which to file a full response to claimant's

4

motion to dismiss. However, no supplemental filing based on claimant's interrogatory responses has been made by the government.

### III. Discussion

#### The Government's Motion to Strike

Claimant must establish his standing to contest the defendant property's forfeiture before his motion to dismiss the action may be heard. Rule G(8)(b), (c). Thus, the government's motion to strike must be resolved at the outset here. Rule G(8)(c)(ii)(A). In order to contest this forfeiture action, claimant must demonstrate his statutory standing by compliance with Rule G(5)(a), as well as establishing his Article III standing by asserting a facially colorable interest in the seized property. U.S. v. $515,060.42 U.S. Currency, 152 F.3d 491, 497-98 (6th Cir. 1998). Of course, this standard does not require claimant to prove the merits of his underlying claim at the pleading stage. Id.

In this case, the verified claim identifies the defendant property as subject to ownership by claimant, whose unnamed business is alleged to have produced the defendant property as profits. While this showing complies with the requirements of Rule G(5)(a), the government argues that without more, the requirements of Article III standing are not met, in that these conclusory assertions are insufficient to establish claimant's standing because of "concern regarding 'straw man' transfers and subsequent assertions of ownership by claimants who lack a legal interest in the defendant property." (Docket Entry No. 11 at 3) (citing U.S. v. $321,470.00 U.S. Currency, 874 F.2d 298, 301, 304 (5th Cir. 1989), U.S. v. 526 Liscum Dr., 866 F.2d 213, 216 (6th Cir. 1989), and U.S. v. $65,822.30 U.S. Currency, 2008 WL 2444441 (E.D. Mich. June 4, 2008)).

5

However, claimant does not merely claim to have possessed the defendant property at or prior to the time of its seizure, but swears under penalty of perjury that he is the owner of the defendant property, which allegedly derived as profits from claimant's business. While the government complains that this paltry description of claimant's interest in the defendant property fails to contain any information concerning the "business" which Mr. Edmondson claims to own or a paper trail connecting that business to the defendant property, the affidavit of Special Agent Mabry, filed in support of the government's complaint, identifies Mr. Edmondson as the owner of Swiss Wear of Nashville, a clothing store, and further reflects an arrestee's statement that Mr. Edmondson "had arranged for [the arrestees] to pick up the currency from the clothing store for the trip to New York." (Docket Entry No. 2 at ¶ 5(b)) The Sixth Circuit in $515,060.42 noted that where the property interest claimed is one of ownership, rather than "naked possession," it is less concerned with whether the claimant is the source of the evidence corroborating the claim, but will scrutinize all filings of record to determine whether the claimant's ownership interest is facially colorable and thus sufficient to establish standing to contest the forfeiture. 152 F.3d at 498-99. As in that case, the undersigned here considers plaintiff's verified claim sufficient to demonstrate his personal stake in the outcome of these proceedings, and particularly when combined with the government's allegations of his involvement with the defendant property, finds that the record sufficiently demonstrates claimant's standing to contest the forfeiture sought here. See id. at 499 (and cases cited therein).

Moreover, as pointed out in $515,060.42, at 499, the inquiry into a claimant's standing is aided under the rules by the government's ability to propound special interrogatories, in order to develop information with which to flush out would-be claimants

6

with no legitimate interest in the defendant property. In this case, the record contains no reference to any information discovered through the special interrogatories submitted to claimant's counsel, nor has the government made any prima facie showing that claimant's interest is merely nominal, and that true ownership of the defendant property is vested in another. Accordingly, the general concern over "straw" owners does not appear to pertain to this particular case. Cf. Vance v. U.S., 965 F.Supp. 944, 955-56 (E.D. Mich. 1997) (citing U.S. v. 526 Liscum Drive, 866 F.2d 213, 217 (6th Cir. 1989)). As noted above, claimant is not required at this threshold stage of the proceedings to establish the merits of his claim, but must only satisfy the court of his standing to proceed. He has done so, in the undersigned's view.

Claimant's Motion to Dismiss

Claimant's motion to dismiss the government's verified complaint is similarly deficient, in that he would have the government prove its case at the pleading stage. In particular, claimant argues the insufficiency of the complaint based on its alleging only circumstantial facts to suggest that the defendant property was connected to a drug offense and therefore subject to forfeiture, without alleging any connection to a particular offense. However, Rule G(8)(b)(ii) refers to the statutorily prescribed "General rules for civil forfeiture proceedings," 18 U.S.C. § 983, in declaring that "the complaint may not be dismissed on the ground that the government did not have adequate evidence at the time the complaint was filed to establish the forfeitability of the property. The sufficiency of the complaint is governed by Rule G(2)." See 18 U.S.C. § 983(a)(3)(D). Rule G(2), in turn, prescribes the requirements for a sufficient civil forfeiture complaint, the last of which is that the complaint must "state sufficiently detailed facts to support a reasonable belief that

7

the government will be able to meet its burden of proof at trial." Rule G(2)(f). This is the only pleading requirement which is argued in claimant's motion to be unmet here.

At trial, the government will be charged with proving by a preponderance of the evidence that the defendant property is subject to forfeiture under 21 U.S.C. § 881(a)(6) as related to the commission or facilitation of a drug offense, and in so doing must establish that there was a substantial connection between the property and the offense, but is specifically entitled by statute to use evidence gathered after the filing of its complaint in order to carry this burden. 18 U.S.C. § 983(c). Accordingly, at the pleading stage of these proceedings, the government need not identify the particular drug offense to which the defendant property was connected, so long as the allegations of its complaint are otherwise sufficient to support the reasonable belief that it will be able to carry its ultimate burden at trial. Here, the undersigned must conclude that such a reasonable belief is supported by the verified complaint's allegations (vis-à-vis Special Agent Mabry's affidavit) that, inter alia, the defendant property was rubber-banded in one thousand dollar denominational bundles, was hidden in the pockets of different items of clothing contained in the arrestees' luggage, and produced a positive response from a certified drug dog, as well as the allegations that the arrestees did not know the specific names or addresses of the businesses they were to deal with upon arrival in Manhattan's garment district, but only the first names of the people with whom they were purportedly traveling to meet. These allegations are sufficiently detailed to at least satisfy the pleading standard of Rule G(2), if not the government's ultimate burden in this case. See U.S. v. $335,260.00 U.S. Currency, 2010 WL 1416919 (N.D. Ohio Apr. 6, 2010), and cases cited therein.

8

Case 3:09-cv-00648   Document 13   Filed 06/17/10   Page 8 of 9 PageID #: 58

## IV. Recommendation

In light of the foregoing, the Magistrate Judge recommends that both the government's motion to strike (Docket Entry No. 11) and the claimant's motion to dismiss (Docket Entry No. 9) be **DENIED.**

Any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. Thomas v. Arn, 474 U.S. 140 (1985); Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004)(en banc).

**ENTERED** this 17th day of June, 2010.

                                                s/ John S. Bryant
                                                JOHN S. BRYANT
                                                UNITED STATES MAGISTRATE JUDGE